UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

WAGNER EQUIPMENT CO.,

    Plaintiff,

v.

                                            Civ. No. 11-466 MV/GBW

JASON WOOD, individually
and dba PAMF Excavation and Logging,
and PAMF Excavation, LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Claim of Business Defamation [Doc. 40]. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the Motion is well-taken and will be granted.

## BACKGROUND

Defendant PAMF Excavation, LLC ("PAMF") is a Washington limited liability company in the business of harvesting trees. Doc. 102 at 3. Its managing member is Defendant Jason Wood ("Wood"). *Id.* In October 2010 and January 2011, Defendants entered into contracts with a New Mexico lumber mill company, Western Wood Products, Inc. ("WWP"), pursuant to which Defendants agreed to harvest wood in New Mexico for WWP's mill. Doc. 176 at 12. In order to purchase the equipment necessary to perform their contract with WWP, Defendants contacted Plaintiff Wagner Equipment Company ("Wagner"). *Id.* at 13. Wagner told Defendants that its "forestry salesman" would contact them. Doc. 120-3 at ¶ 3. Nick Montoya, an employee of

Wagner, then contacted Defendants about their equipment needs. *Id.* Ultimately, Montoya located a used Caterpillar Model 501 Harvester ("Harvester") in South Carolina. Doc. 176 at 12.

On October 19, 2010, PAMF purchased the Harvester pursuant to a Sales Contract Security Agreement and Financing Statement ("Sales Contract"). Doc. 102-5. Wood executed the contract for PAMF. Doc. 102 at 4. Although Wagner was not a party to the contract, Wagner received a finder's fee for arranging the sale of the Harvester to Defendants. Doc. 176 at 6.

Once the Harvester was delivered, Defendants detected problems with it. *Id.* at 5. Specifically, Defendants were unhappy with its output, and felt that it was not in the condition that had been represented to them. *Id.* After communications in which Wood expressed his dissatisfaction with Wagner, and Wagner's lack of success in addressing Wood's concerns, Wood, individually and on behalf of PAMF, entered into a Settlement Agreement and Release ("Settlement Agreement"), effective as of March 9, 2011, with Wagner, Cat Financial Services, Inc., and Cat Inc. Doc. 120-5.

On April 6, 2011, Wood sent an email message to Wagner stating that "[d]ue to the unsatisfactory condition" of the Harvester as it had been returned to Defendants from Wagner after work was performed, "financial harm" was being caused to PAMF "that nullifies the settlement agreement." Doc. 102-1 at 12. Wood further wrote that the Harvester would "not be put into operation [until] all problems are fixed to satisfaction of a PAMF [] representative." *Id.* Wood subsequently refused to allow Wagner to retrieve the Harvester to take it to its shop for repairs, or to come to Defendants' job site to repair the Harvester. *Id.* at 9.

On April 22, 2011, Wood forwarded to Wagner an email message, noting in the re: line: "Just the start long weekend ahead." Doc. 125-4. The forwarded email message appeared to have been sent to the email address, "news@kob.com", and stated:

2

> My name [is] Jason [W]ood and I own a logging company in [C]imarron [N]ew Mexico and Wagner cat . . . equipment dealer has caused me to lose a 4 million dollar contract and going to have to file for bankruptc[y.] I have all evidence documented how they caused it and was wondering if you would do a story on it to prevent other contractors from going through same nightmare.

*Id.*

Two days later, on April 24, 2011, Wood sent an email message to several recipients, including Wagner, describing in negative terms his experience with Wagner and Caterpillar. The email states, in relevant part:

> My goal is to show other contractors and machine owners why not to buy Cat equipment.
>
> * * *
>
> Last month alone I know of four major companies that always bought Cat and after I told them my situation they went and bought competitor's equipment. There was at least 12 machines that would have been purchases from NC Machinery but they backed out and went to the competitors thanks to me. From the contacts I have spoken with, this month will be even worse for NC Machinery. Between March and April I figure they will have lost over three million dollars in sales because of this nightmare Wagner caused. I had a meeting with three of the largest private land owners in the country this last Thursday and let them know I wouldn't be logging on their property because of the joint efforts between Cat and Wagner in losing my contract. So there are three more entities that will no longer be purchasing Cat products.
>
> The whole reason for this email to let Cat dealers know that I sent over 115 emails Saturday morning to news stations, newspapers, equipment magazines and other sources that cater to equipment buyers. This in turn will open buyers' eyes and prevent them from buying Cat products. So far 27 emails have come back from people wanting to publish my story. I have everything documented from day one. Also, I am going to send out multiple letters to other contractors telling my story to hopefully prevent them from buying Cat.

Doc. 125-2.

Thereafter, on May 10, 2011, Wood sent another email message to Wagner "to show how the big equipment giant Caterpillar treats their customers." Doc. 125-3. In the message, Wood

3

wrote that he wanted to explain "the whole story" to "a bunch of people to once again show how Cat and Wagner priorities are to drive customer[]s bankrupt."  *Id*.

Based on what Plaintiff described as "an email campaign to slander Plaintiff's name in the business community", Doc. 1-2, ¶ 15, on May 10, 2011, Plaintiff commenced this action against Defendants in New Mexico state court.  On June 1, 2011, Defendants removed the case to this Court under federal diversity jurisdiction.  Doc. 1.  In Count Two of its Amended Complaint, Plaintiff alleges a claim of business defamation.  Doc. 180 ¶¶ 25-28.  Specifically, Plaintiff alleges that Defendants' "false statements have wrongly caused injury to Wagner's reputation and good will by asserting, *inter alia*, that Wagner had a hand in causing PAMF to lose a $4 million contract when in fact, the contract was still in effect," and that "Wagner's business reputation and good will have been damaged as a proximate result of PAMF's maliciously false statements to suppliers, business associates and existing and potentially future customers for Wagner products and services."  *Id.*

Defendants filed the instant motion for summary judgment on Plaintiff's business defamation claim.  Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Plaintiff moved to postpone ruling on the motion until discovery was completed.  Doc. 48.  The Court granted Plaintiff's motion, and ordered Plaintiff to file its response two weeks after the close of discovery.  Doc. 95.  Thereafter, Plaintiff filed its response in opposition, Doc. 125, and Defendants' reply followed.  Doc. 142.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  "[T]he mere

4

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted). The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

**DISCUSSION**

Defendants move for summary judgment on Plaintiff's claim of business defamation, as set forth in Count Two of the Amended Complaint. In order to establish a claim of defamation under New Mexico law, a plaintiff must prove each of the following elements: (1) the defendant published the communication; (2) the communication contains a statement of fact; (3) the communication was concerning the plaintiff; (4) the statement of fact was false; (5) the communication was defamatory; (6) the persons receiving the communication understood it to be defamatory; (7) the defendant knew that the communication was false or negligently failed to recognized that it was false; and (8) the communication caused actual injury to the plaintiff's reputation. NMRA, Civ. UJI 13-1002. Defendants argue that Plaintiff cannot established four of these elements, namely that: the communications at issue were published; the communications at issue were statements of fact, as opposed to statements of opinion; the communications at issue were understood to be defamatory; or that the communications at issue caused actual injury to Plaintiff's reputation. As discussed below, the Court agrees that Plaintiff cannot show actual injury to its reputation. The absence of this element is fatal to Plaintiff's claim, and thus provides a sufficient independent basis to grant Defendants' motion for summary judgment. *Belcher v. Boeing Comm. Airplane Group*, 105 F. App'x 222, 225, 2004 WL 1472812, *2 (10th Cir. July 1, 2004) (stating that, once a defendant has identified an element of a claim that the plaintiff cannot prove, "all other factual disputes concerning the claim become immaterial and summary judgment is properly entered").

I.   Actual Injury to Reputation

The New Mexico Supreme Court has held that "actual injury to reputation must be shown as part of a plaintiff's prima facie case in order to establish liability for defamation." *Smith v.*

*Durden*, 276 P.3d 943, 948-49 (N.M. 2012). The Court specifically articulated that "[t]he primary basis of an action for . . . defamation is contained in the damage that results from the destruction of or harm to that most personal and prized acquisition, one's reputation." *Id.* at 949 (citation omitted). Further, the Court "emphasized that no matter how opprobrious a defendant's statement may be, a plaintiff is not entitled to recover damages unless he or she can show that it caused an injury to reputation." *Id.* (citation omitted). Finally, in clarifying that New Mexico law requires plaintiffs to prove actual injury to reputation for recovery in all defamation cases, the New Mexico Supreme Court acknowledged that "proof of actual damages will be impossible in a great many cases." *Id.* at 952. The Court explained: "It is undoubtedly the case that a system that restricts recovery to actual loss will be imperfect, but so is any system that attempts to compensate human injury with money. The interest served by allowing recovery for defamation, however, is the interest of compensating individuals for injury to reputation." *Id.* (citation omitted).

Here, Plaintiff has failed to come forward with evidence of any kind to support an argument that its reputation was actually injured by the alleged publication of Wood's email messages. *Id.* Indeed, Plaintiff has submitted no evidence other than the allegedly defamatory email messages themselves. In particular, to prove its allegation of actual injury to its reputation, Plaintiff cites only to Wood's April 24, 2011 email message. According to Plaintiff, this email message demonstrates that "[a]s a result of Defendants' communications, many recipients decided not to transact business with Wagner," and that "Defendants' communications about Wagner led to substantial lost sales and business opportunities." Doc. 125 at 7. The Court finds this message insufficient to raise a fact question, much less establish as a matter of law, that Defendants' communications caused actual injury to Plaintiff's reputation.

First, nowhere in Wood's email message does he mention any individuals or companies that, after receiving communications from Defendants, decided not to "transact business with Wagner." Rather, the email message discusses in vague terms "companies" and "contacts" who decided not to make purchases from an undefined entity referred to only as "NC Machinery." Neither the email message itself, nor Plaintiff's brief, provides any basis for the Court to infer that NC Machinery is connected in any way to Wagner. Similarly, while the email message states that there are "three more entities that will no longer be purchasing Cat products," there are no similar statements that, as a result of Defendants' communications, any entity will no longer be transacting business with *Wagner*. While Wood's April 24, 2011 email message makes clear his goal of convincing others not to "buy[] Cat," and refers to unidentified "major companies," "contacts," and "entities" that "will no longer be purchasing Cat products," there is simply nothing in this message to suggest, much less prove, that, as a result of Defendants' communications, *Wagner* suffered "substantial lost sales and business opportunities."

Indeed, even assuming *arguendo* that Wood's April 24, 2011 email message relayed statements demonstrating "substantial lost sales and business opportunities" for Wagner, the statements relayed by Wood in his email message constitute inadmissible hearsay, and thus may not be considered on summary judgment. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (only admissible evidence may be considered in determining summary judgment). Rule 801(c) of the Federal Rules of Evidence defines hearsay generally as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802 provides that, subject to certain exceptions, hearsay is not admissible. In his April 24, 2011 email message, Wood repeats statements allegedly made to him by unnamed third parties, described only as "major companies,"

"contacts," and entities," who relayed to him their intention or decision not to transact business with Cat or NC Machinery. The statements allegedly made to Wood, which he repeats in his email message, fit the general definition of hearsay, as they are offered to show that the makers of those statements elected not to transact business with Cat or NC Machinery.

Plaintiff nonetheless argues that the email message, and the statements relayed therein, are admissible as an admission against a party opponent under Rule 801(d)(2). Rule 801(d)(2) provides in relevant part that a statement is "not hearsay" if it is offered against a party and is the party's own statement. This is true even if the declarant lacked personal knowledge of the matter asserted. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 667 (10th Cir. 2006).

Plaintiff, however, seeks to fit into the category of an admission not simply statements made by Wood without personal knowledge, but rather statements made by Wood relaying statements originally made by unidentified third parties. Such "hearsay within hearsay" would be admissible only if "each link in the chain is admissible under an exception to the hearsay rules or is not defined as hearsay." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998). Plaintiff has failed to establish the admissibility of each link in the chain. To the contrary, the statements relayed by Wood in his email message are "unattributed statements repeated by [a] party-opponent[], [which] cannot be admissible." *Id.* "As the original declarant is unknown, it is impossible to determine whether the original declarant also fits within the party-opponent definition." *Id.* (citing *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1001-02 (3d Cir. 1988) (excluding such unattributed hearsay when repeated by party opponent); *Cedeck v. Hamiltonian Fed. Sav. & Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977) ("That part of [the party opponent's] statement which contains a reiteration of what someone told him is not admissible as

an admission by [a] party-opponent since the author of the statement is unknown.")).  Because Plaintiff has failed to establish that the unattributed statements contained in Wood's email message are not hearsay or fit under a hearsay exception, Wood's email message is not admissible to prove that the makers of the unattributed statements in fact elected not to transact business with Cat or NC Machinery.

Wood's April 24, 2011 email message thus fails to provide the necessary evidentiary support for Plaintiff's claim of actual injury.  As noted above, Plaintiff has failed to proffer any other evidence in support of its claim of actual injury to its reputation.  Accordingly, Plaintiff cannot establish an element essential to its defamation claim, and summary judgment in Defendants' favor is warranted.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's Claim of Business Defamation [Doc. 40] is granted.

DATED this 27th day of January, 2014.

_____
MARTHA VÁZQUEZ
United States District Judge