# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

WAGNER EQUIPMENT CO.,

      Plaintiff,

v.

                                      Civ. No. 11-466 MV/GBW

JASON WOOD, individually
and dba PAMF Excavation and Logging,
and PAMF Excavation, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Reconsideration [Doc. 200]. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the Motion is not well-taken and will be denied.

## BACKGROUND

Defendant PAMF Excavation, LLC ("PAMF") is a Washington limited liability company in the business of harvesting trees. Doc. 102 at 3. Its managing member is Defendant Jason Wood ("Wood"). *Id.* In October 2010 and January 2011, Defendants entered into contracts with a New Mexico lumber mill company, Western Wood Products, Inc. ("WWP"), pursuant to which Defendants agreed to harvest wood in New Mexico for WWP's mill. Doc. 176 at 12. In order to purchase the equipment necessary to perform their contract with WWP, Defendants contacted Plaintiff Wagner Equipment Company ("Wagner"). *Id.* at 13. Wagner told Defendants that its "forestry salesman" would contact them. Doc. 120-3 at ¶ 3. Nick Montoya, an employee of Wagner, then contacted Defendants about their equipment needs. *Id.* Ultimately, Montoya

located a used Caterpillar Model 501 Harvester ("Harvester") in South Carolina.   Doc. 176 at 12.

On October 19, 2010, PAMF purchased the Harvester pursuant to a Sales Contract Security Agreement and Financing Statement ("Sales Contract").   Doc. 102-5.   Wood executed the contract for PAMF.   Doc. 102 at 4.   Although Wagner was not a party to the contract, Wagner received a finder's fee for arranging the sale of the Harvester to Defendants.   Doc. 176 at 6.

After delivery, Defendants "soon realized that the Harvester had many [] problems," including "missing and damaged parts," and as a result, "was unusable."   Doc. 120-3 at ¶ 9. "After a series of Wagner's failures to correct the Harvester," Doc. 120-3 at ¶ 11, Wood, individually and on behalf of PAMF, entered into a Settlement Agreement and Release ("Settlement Agreement"), effective as of March 9, 2011, with Wagner, Cat Financial Services, Inc., and Cat Inc.   Doc. 120-5.   The Settlement Agreement recites that:   PAMF experienced problems with the operation of the Harvester, which it contends caused PAMF to suffer certain economic damages; PAMF made certain demands on Wagner for the alleged damages ("PAMF Demands"); and PAMF presented to Wagner for payment a demand that PAMF had received from WWP ("WWP Demand").   *Id.* at 1.   Further, the Settlement Agreement recites that the parties had various discussions and negotiations regarding resolution of the issues surrounding the Harvester and the demands made by PAMF on Wagner, and "have agreed upon terms and conditions of settlement of all such issues."   *Id.*   Pursuant to the Settlement Agreement, Wagner noted its previous payments of certain sums and completion of certain repairs, and agreed to make payments of $8,122.71 to certain of PAMF's creditors, and a payment of $3,400 to PAMF.   *Id.* at 2.   In addition, Wagner agreed to "make its best efforts to address those issues described in the attached Exhibit D, to the reasonable satisfaction of PAMF."   *Id.*   In consideration of Wagner's promises to pay these sums and make these repairs, PAMF and "all of its owners, officers,

members, directors, employees, agents, successors, assigns, and anyone claiming by, under or

through them" agreed to "voluntarily and knowingly release, acquit and forever discharge each of

Wagner, CAT and CAT Financial and all of their respective officers, shareholders, directors,

employees, agents, successors and assigns, fully and completely from all claims, demands,

actions, causes of action, damages, remedies, costs, attorneys' fees and expenses that PAMF and

anyone claiming by, under or through them ever had, now has or may in the future have which

arise out of "(i) the Harvester; (ii) the PAMF Demands; or (iii) the WWP Demand."   *Id.* at 2-3.

Thereafter, Wagner made the two payments to which it had agreed in the Settlement

Agreement.   To date, Defendants have not returned either of those payments.   Doc. 120 at 11.

On March 21, 2011, Wagner picked up the Harvester and brought it to Wagner's shop in

Pueblo, Colorado, with the intent of making the repairs required under the Settlement Agreement.

Doc. 166-3 at 173-74.   Wagner returned the Harvester to Defendants on April 5, 2011.   Doc. 166

at 11.   Issues with the Harvester had not been addressed to Defendant's reasonable satisfaction.

Doc. 120-3 at ¶ 13.

On April 6, 2011, Wood sent an email message to Wagner stating that "[d]ue to the

unsatisfactory condition" of the Harvester as it had been returned to Defendants from Wagner after

work was performed, "financial harm" was being caused to PAMF "that nullifies the settlement

agreement."   Doc. 102-1 at 12.   Wood further wrote that the Harvester would "not be put into

operation [until] all problems are fixed to satisfaction of a PAMF [] representative."   *Id.*   Wood

subsequently refused to allow Wagner to retrieve the Harvester to take it to its shop for repairs, or

to come to Defendants' job site to repair the Harvester.   *Id.* at 9.   Because of the issues with the

Harvester, Defendants could not deliver timber to WWP as required by their contract, and WWP

canceled the contract.   Doc. 176 at 19.

On May 10, 2011, Plaintiff filed the instant action against Defendants in New Mexico state court.   On June 1, 2011, Defendants removed the case to this Court under federal diversity jurisdiction.   Doc. 1.   On June 8, 2011, Defendants filed a Counterclaim, alleging breach of contract (Count I), breach of duty of good faith and fair dealing (Count II), breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), breach of implied warranty of fitness for a particular purpose (Count V), and malicious abuse of process (Count VI). Doc. 8.   On April 5, 2012, Plaintiff filed an opposed motion for summary judgment, seeking dismissal of the Counterclaim (Count I through VI).   Doc. 101.   In a Memorandum Opinion and Order entered February 26, 2013, the Court granted the motion ("February 26, 2013 Opinion"). Doc. 183.

On the instant motion, Defendants seek reconsideration of the Court's decision, as set forth in the February 26, 2013 Opinion, granting summary judgment in favor of Plaintiff on Defendants' Counterclaims I through V.   In support of their motion, Defendants argue that the Court misapprehended the controlling law in reaching its decision.   Plaintiff opposes Defendants' motion.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration.   *In re Thornburg Mortgage, Inc. Secs. Litig.*, No. 07-85, 2011 WL 2429189, *19 (D.N.M., June 2, 2011).   When a party seeks to obtain reconsideration of a non-final order, the motion is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."   *Wagoner v. Wagoner*, 983 F.2d 1120, 1122 n.1 (10th Cir. 1991).   Although a district court has "considerable discretion" to revisit its prior decisions, *see Thornburg Mortgage*, 2011 WL 2429189 at *19, "as a

4

rule [the Court] should be loathe to do so in the absence of extraordinary circumstances such as

where the initial decision was clearly erroneous and would work a manifest injustice."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted).

Tenth Circuit case law is clear that a motion for reconsideration is an "inappropriate

vehicle [] to reargue an issue previously addressed by the court when the motion merely advances

new arguments, or supporting facts which were available at the time of the original motion."

*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Fye v. Oklahoma*,

516 F.3d 1217, 1224 (10th Cir. 2011) (finding district court did not abuse its discretion in denying

motion for reconsideration on basis that "considerations of fairness and judicial economy

outweigh[ed] the Plaintiffs' interest in getting a second (or third) bite at the summary judgment

apple"); *Otero v. Nat'l Distrib. Co., Inc.*, 627 F. Supp. 2d 1232, 1237 (D.N.M. 2009) (motion for

reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories,

securing a rehearing on the merits, or otherwise taking a second bite at the apple").   Rather,

"[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling

law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent

manifest injustice."   *Servants of Paraclete*, 204 F.3d at 1012.   "Thus, a motion for

reconsideration is appropriate where the court has misapprehended the facts, a party's position, or

the controlling law."   *Id.*

## DISCUSSION

Defendants ask the Court to reconsider its decision in the February 26, 2013 Opinion

granting summary judgment in Plaintiff's favor on Defendants' Counterclaims I through V.   In

support of their request, Defendants argue that, by analyzing Defendants' counterclaims under the

theory of contract rescission, the Court misapprehended the controlling law as it relates to claims

5

for contract termination.   Specifically, Defendants argue that they did not seek to rescind the Settlement Agreement, but rather to terminate the Settlement Agreement because of Plaintiff's material breach of that agreement.   According to Defendant, Plaintiff's material breach allows Defendants to retain any partial consideration received pursuant to the contract, terminate the contract, and be excused from performing their obligations under the contract.

The Court addressed and rejected this very argument when Defendants first raised it in response to Plaintiff's motion for summary judgment.   Doc. 183 at 8-11.   Defendants have come forward with no authority to suggest that the Court's analysis misapprehended New Mexico law as it applies to the factual circumstances here.   Rather, Defendants continue to cite to *Famiglietta v. Ivie-Miller Enter., Inc.*, 966 P.2d 777 (N.M. Ct. App. 1998) in support of their position.   The Court does not agree that "a careful reading" of that decision reveals that New Mexico courts recognize the distinction between the terms "rescission" and "termination" that Defendants seek to draw.   The Court finds no basis to reconsider its interpretation of *Famiglietta*, or its application of that case to the facts here.   In short, nothing in *Famiglietta* suggests that Defendants may be excused from their obligations under the Settlement Agreement, while still retaining the benefit they received from that agreement, by calling their nullification of the Settlement Agreement a "termination" rather than a "rescission."

Nor does Defendants' citation to authority from other jurisdictions demonstrate that the Court misapprehended New Mexico law, which the parties agree is controlling here.   To the contrary, the general rule appears to be that a party to a settlement agreement alleging breach thereof has two options:   to seek enforcement of the settlement agreement or to rescind that settlement agreement and pursue the underlying claims.   *Boulware v. Baldwin*, No. 12-4148, 2013 WL 5539629, *1 (10th Cir. Oct. 9, 2013).   Defendants have provided no support for their

repeated argument that, rather than choose between these options, they may retain the benefit they already gained from the Settlement Agreement, while at the same time declaring that very agreement null and void, so as to excuse their own obligations under the Settlement Agreement. The Court is equally unconvinced, this second time around, that Defendants are entitled essentially to have their cake and eat it too.

## **CONCLUSION**

The Court does not agree with Defendants that it misapprehended the controlling law as it relates to Defendants' claims for termination of the Settlement Agreement.   Accordingly, there is no basis for the Court to reconsider its decision granting summary judgment in favor of Plaintiff on Defendants' Counterclaims I through V.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Reconsideration [Doc. 200] is denied.

DATED this 30th day of January, 2014.

_____
MARTHA VÁZQUEZ
United States District Judge

7